**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO.:**

CROSSFIRE HURRICANE HOLDINGS, L.P.,

Plaintiff,

vs.

PAVISA USA, LLC,

Defendant.
_________________________________________/

# COMPLAINT

The Plaintiff, CROSSFIRE HURRICANE HOLDINGS, L.P., ("Plaintiff") by and through its undersigned counsel, sues the Defendant, PAVISA USA, LLC ("Defendant"), and alleges as follows:

1. This is an action for damages in excess of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3. At all times material hereto, the Plaintiff, CROSSFIRE HURRICANE HOLDINGS, L.P. was a foreign limited partnership with its principal address located at 2200 Colorado Ave., Santa Monica, California 90404.

4. At all times material hereto, the Defendant, PAVISA USA, LLC, was and is a foreign limited liability company organized under the laws of Texas with its principal place of business located at 10900 Research Blvd. Ste 160C – PMB 1378 Austin, TX 78759. Upon information and belief, all members of Defendant are citizens of states other than California and Delaware. Defendant is a citizen of Texas for purposes of diversity jurisdiction.

5. Complete diversity of citizenship exists between Plaintiff and Defendant.

6. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, specifically in Pasco County, Florida, where the goods that are the subject of this action were delivered to 11807 Little Road, New Port Richey, Florida 34654, and where the causes of action accrued.

8. All conditions precedent to bringing this action have been performed, have occurred, or have been waived.

## GENERAL ALLEGATIONS

9. On or about April 21, 2023, Plaintiff and Defendant entered into a purchase order agreement (the "Agreement") for the manufacture and delivery of 100,000 glass bottles for use in Plaintiff's rum beverage business.

10. The Agreement specified the following terms and requirements:

a. 100,000 bottles at a cost of $233,000.00.

b. Engineering costs of $1,500.00.

c. Tooling costs of $42,500.00.

d. Total contract price of $277,000.00.

11. The Agreement incorporated by reference "Product Specifications," which included requirements for:

a. Signed bottle drawing.

b. Signed deco print.

c. Signed packaging specification.

d. Signed Quality Agreement.

12. The Agreement expressly provided: "In the case of products falling outside of approved quality limits, Pavisa is responsible for the replacement of defective materials and any QA approved related."

13. No warranties were disclaimed in the Agreement.

14. On June 12, 2023, Defendant sent an invoice for "Cross Fire Rum Embossed Automatic Tooling," which was due to be paid by June 20, 2023.

15. Plaintiff promptly paid the invoice, dated June 12, 2023.

16. On September 28, 2023, Mr. John Fincher, on behalf of Plaintiff, sent Manuel Ortega, Defendant's representative, an email specifically addressing concerns about the discrepancy in the gram weight of the pre-production glassware samples.

17. On October 10, 2023, Mr. Stephen Gadaleta of Plaintiff signed the required bottle drawing, deco print, packaging specification, and quality agreement.

18. The signed bottle drawing specified critical requirements including:

a. Fill line must be 60 mm below the top of the bottle – Tolerance of plus or minus 9.5 ml with 700 ML of liquid in the bottle.

b. Bottle weight of 850 grams.

19. On November 13, 2023, Mr. John Fincher was on site for the initial production run of Plaintiff's glassware.

20. Master Limit Bottles defining the acceptable limits for visual defects were signed by Mr. John Fincher. However, bottle functionality was neither tested nor validated by Plaintiff at this time.

21. Defendant delivered 99,000 bottles to Plaintiff's facility at 425 Recker Hwy, Auburndale, Florida 33823 in late November 2023.

22. On December 1, 2023, mere days after receiving the bottles, Plaintiff discovered that the bottles supplied by Defendant failed to conform to the specifications in multiple material respects, including the following:

a. Fill Line Testing Failures: Testing revealed catastrophic non-conformity: The specified fill line of 60mm from the lip should have produced fill levels of 700ml ± 9.5 ml (range of 690.5 ml to 709.5 ml).

i. Testing of 98 bottles filled to the specified fill line resulted in liquid volumes ranging from 648.09 ml to 721.75 ml, a variation of 73.66 ml.

ii. Additional sample testing of 100 bottles revealed that 75% of the samples were outside of the specified tolerance.

1. 71% filled below the specified range.

2. 4% filled above the specified range.

3. Only 25% of the bottles fell within Defendant's defined Product Specifications.

b. Bottle Weight Deficiencies: Testing revealed systematic non-conformity:

i. The specification required a bottle weight of 850 grams per bottle.

ii. Testing of 300 bottles showed that every single bottle contained less glass than re-quired under the Agreement.

iii. None of the 300 bottles tested met the intended bottle weight.

iv. This was clearly the result of an intentional design choice by Defendant.

23. These non-conformities render the bottles completely unusable to Plaintiff and would have caused severe regulatory and legal consequences if put into circulation, including:

a. TTB Tax Consequences: Overfilled bottles would have triggered Alcohol and To-bacco Tax and Trade Bureau involvement requiring payment of taxes on excess volume, potentially resulting in unpaid taxes, fees, penalties, and enforcement action pursuant to CFR 5.63 and CFR 19.356.

b. FDA Recall: The significant underfilling issues (71% of bottles) likely would have triggered an FDA recall.

c. Class Action Liability: The underfilled bottles would have exposed Plaintiff to class action claims alleging deceptive trade practices.

d. Brand Reputation Damage: These issues would have severely damaged Plaintiff's brand reputation.

24. Defendant was made aware of these issues promptly and admitted the bottles were materially out of specification.

25. On September 18, 2024, Manuel Ortega sent an email to Plaintiff stating: "I understand the concern regarding the quality issues from the first run, and I'd like to assure you that we're fully committed to addressing and resolving them. We've been reviewing the production process internally to identify and correct the attributes that caused the issues. With these improvements in place, we're confident the next run will meet your expectations."

26. This email constitutes an admission that the bottles from the first production run suffered from quality issues that required correction.

27. Despite acknowledging the defects, Defendant refused to take back the non-conforming goods or to compensate Plaintiff for its losses.

28. As a direct and proximate result of Defendant's delivery of non-conforming goods, Plaintiff has suffered damages including but not limited to:

a. Glass price for 100,000 non-conforming units: $233,000.00.

b. Storage costs (19 months at $5,913.60 per month): $112,358.40.

c. Tooling and engineering costs for non-conforming goods: $44,000.00.

d. Additional testing and consulting costs: $17,067.29.

e. Total damages: $406,425.69 (plus continuing damages).

**COUNT I - BREACH OF CONTRACT**

29. Plaintiff realleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

30. Plaintiff and Defendant entered into a valid and enforceable contract for the manufacture and delivery of 100,000 glass bottles meeting specific specifications.

31. Plaintiff performed all conditions precedent under the Agreement, including payment of all amounts due.

32. Defendant materially breached the Agreement by delivering bottles that failed to meet the contracted specifications, including:

a. Failure to meet specified fill line requirements.

b. Failure to meet specified bottle weight of 850 grams.

c. Failure to deliver bottles within approved quality limits.

33. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages in excess of $406,425.69.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in excess of $406,425.69, pre-judgment interest, costs, and such other relief as this Court deems just and proper.

**COUNT II - BREACH OF EXPRESS WARRANTY**

34. Plaintiff realleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

35. The signed bottle drawing and product specifications created express warranties regarding the bottles' weight, dimensions, and fill line specifications.

36. Defendant expressly warranted that the bottles would:

a. Have a fill line 60 mm below the top of the bottle with tolerance of ± 9.5 ml at 700 ML.

b. Weigh 850 grams per bottle.

c. Meet all specifications in the signed bottle drawing and product specifications.

37. Defendant materially breached these express warranties as demonstrated by:

a. 75% of bottles failing fill line testing.

b. 100% of tested bottles failing to meet the specified weight requirement.

38. As a direct and proximate result of Defendant's breach of express warranties, Plaintiff has suffered damages in excess of $406,425.69.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in excess of $406,425.69, pre-judgment interest, costs, and such other relief as this Court deems just and proper.

## COUNT III - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

40. Pursuant to Florida Statute § 672.314, Defendant impliedly warranted that the bottles would be merchantable and fit for the ordinary purposes for which such goods are used.

41. The bottles were not merchantable as they:

a. Did not hold the required volume at the contracted fill level.

b. Failed to fulfill their basic function as beverage containers.

c. Demonstrated a 75% failure rate in fill testing.

42. Defendant's September 18, 2024, statement that "we're confident the next run will meet your expectations" constitutes an admission that the first run failed to meet reasonable expectations for merchantability.

43. Defendant did not properly disclaim the implied warranty of merchantability as required under Florida Statute § 672.316, which requires any exclusion to be in writing, conspicuous, and specifically mention "merchantability."

44. As a direct and proximate result of Defendant's breach of the implied warranty of merchant-ability, Plaintiff has suffered damages in excess of $406,425.69.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in excess of $406,425.69, pre-judgment interest, costs, and such other relief as this Court deems just and proper.

## COUNT IV - BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

45. Plaintiff realleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

46. Pursuant to Florida Statute § 672.315, Defendant had reason to know the particular purpose for which the bottles were required, specifically as containers for alcoholic beverages requiring precise fill levels for regulatory compliance.

47. Plaintiff relied on Defendant's skill and judgment in selecting and manufacturing suitable bottles for this particular purpose.

48. The bottles were unfit for their particular purpose as alcoholic beverage containers because they:

a. Failed to maintain consistent fill levels necessary for TTB compliance.

b. Would have exposed Plaintiff to regulatory enforcement actions.

c. Could not be legally sold in interstate commerce.

49. As a direct and proximate result of Defendant's breach of the implied warranty of fitness for particular purpose, Plaintiff has suffered damages in excess of $406,425.69.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in excess of $406,425.69, pre-judgment interest, costs, and such other relief as this Court deems just and proper.

## COUNT V - VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

50. Plaintiff realleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

51. This is an action for damages and injunctive relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201-501.213 ("FDUTPA").

52. Plaintiff is a "consumer" as defined by FDUTPA.

53. Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce by:

a. Representing that the bottles would meet specific quality standards when they did not.

b. Intentionally manufacturing underweight bottles while representing they would meet weight specifications.

c. Failing to disclose material defects in the bottles' design and manufacture.

54. Defendant's unfair and deceptive trade practices were the direct and proximate cause of Plaintiff's actual damages.

55. Pursuant to Florida Statutes § 501.211, Plaintiff is entitled to recover actual damages, attorneys' fees, and costs.

WHEREFORE, Plaintiff demands judgment against Defendant for actual damages in excess of $406,425.69, attorneys' fees, costs, pre-judgment interest, and such other relief as this Court deems just and proper.

**COUNT VI - NEGLIGENT DESIGN AND MANUFACTURE**

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

57. Defendant owed a duty to Plaintiff to exercise reasonable care in the design, manufacture, and quality control of the 100,000 glass bottles.

58. Defendant breached its duty of care by:

a. Negligently designing bottles that could not meet specified fill line requirements.

b. Negligently manufacturing bottles with insufficient glass weight.

c. Failing to implement adequate quality control measures.

d. Intentionally deviating from specifications without disclosure.

59. Defendant's breach of its duty of care was the direct and proximate cause of Plaintiff's damages.

60. As a result of Defendant's negligence, Plaintiff has suffered damages in excess of $406,425.69.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in excess of $406,425.69, pre-judgment interest, costs, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendant on all counts;

b. Award Plaintiff compensatory damages in an amount to be proven at trial, but not less than $406,425.69;

c. Award Plaintiff pre-judgment interest from December 1, 2023, pursuant to Florida Statute § 55.03;

d. Award Plaintiff its reasonable attorneys' fees and costs pursuant to applicable law and the parties' agreement; and

e. Award such other and further relief as this Court deems just and proper.

## DESIGNATION OF E-MAIL ADDRESS IN COMPLIANCE WITH RULE 2.516

In Compliance with Rule 2.516 all pleadings in this cause shall be served on the undersigned by E-mail to tcarr@goldbergsegalla.com.

Dated: December 10, 2025.

*/s/ Timothy Carr*
Timothy Carr, Esq.
Florida Bar No: 1047538
GOLDBERG SEGALLA, LLP
500 S. Australian Avenue, Ste. 1000
West Palm Beach, Florida 33401
Telephone: (561) 618-4450
E-service Emails:
tcarr@goldbergsegalla.com
ecanto@goldbergsegalla.com